**Bobby DODD, Plaintiff,**

v.

**CITY OF CHATTANOOGA, Tennessee; and Chattanooga Fire and Police Pension Fund, Defendants.**

**Case No. 1:14–cv–358**

United States District Court, E.D. Tennessee, Southern Division, at Chattanooga.

Signed March 15, 2016

W. Gerald Tidwell, Jr., Wesley Adam Izell, Tidwell & Izell, P.C., Chattanooga, TN, for Plaintiff.

W. Scott Parrish, Zachary H. Greene, Miller & Martin, PLLC, Cameron S. Hill, Melanie Prince, William E. Robinson, Baker, Donelson, Bearman, Caldwell & Berkowitz, Chattanooga, TN, for Defendants.

## ORDER

HARRY S. MATTICE, JR., UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff's Motion for Summary Judgment (Doc. 41), Defendant City of Chattanooga, Tennessee's Motion for Summary Judgment (Doc. 37), and Defendant Chattanooga Fire and Police Pension Fund's Motion for Summary Judgment (Doc. 43). For the reasons stated herein, Plaintiff's Motion (Doc. 41) will be **DENIED**, and Defendant's Motions (Docs. 37, 43) will be **GRANTED**.

## I. INTRODUCTION

Plaintiff Bobby Dodd filed the instant action in the Chancery Court for Hamilton County, Tennessee on November 19, 2014, claiming that certain changes to the Chattanooga Fire and Police Pension Fund (hereinafter "Pension Plan") violated his state and federal constitutional rights. On December 18, 2014, Defendant City of Chattanooga and Defendant Chattanooga Fire and Police Pension Fund (hereinafter "Defendants") [1] removed the action to this

---

1. While Defendants have filed separate briefs and have asserted slightly different legal argu-

Court based on federal question and supplemental jurisdiction. *See* 28 U.S.C. § 1331; 28 U.S.C. § 1367. The facts, which are largely undisputed, are as follows:

Plaintiff began working for the Chattanooga Police Department on June 6, 1986 as a patrol officer. Over the course of his career with the Department, Plaintiff amassed twenty-five and one half years of service, and retired as Chief of Police effective December 31, 2013.[2] Upon reaching twenty-five years of service, Plaintiff became eligible for a service retirement pension. Chattanooga, Tenn. City Code § 2-411(a) ("From and after July 1, 1999, a member of the Pension Fund who was employed in the Fire Department or Police Department may at his or her election retire upon completion of twenty-five (25) years of active service in the Fire or Police Departments, and upon notifying the Board in writing of such election, receive an annual Service Retirement Pension.").[3] Upon retirement, a retiree receives his/her pension as a "single life annuity," through which the retiree is given a monthly payment until his/her death in an amount calculated by a formula not at issue in this litigation. Alternatively, a retiree could elect to have his/her pension spread out over his/her lifetime and that of a designated beneficiary. These so-called "Joint and Survivor" options are governed by City Code § 2-418, which reads, in relevant part

[w]hen a member reaches the conditions for retirement benefits under Section 2-411 ... he or she may elect to have the pension benefits under said Sections converted into an optional retirement benefit which is the actuarial equivalent of such benefit based upon a mortality basis approved from time to time by the Board, and the age of the member and of the beneficiary as of the date the member becomes eligible to exercise the option ... Option D: A decreased retirement benefit payable to the retired participant for life which shall continue after his or her death to their surviving beneficiary at fifty percent (50%) of that payable to the retired participant.

City Code § 2-418(1). By electing an option under § 2-418, a retiree receives the *functional equivalent* of a single life annuity, but spreads his/her benefits out over two lifetimes. At all times relevant to this litigation, City Code § 2-411(a) and § 2-418 have not changed.

Furthermore, for the vast majority ·of Plaintiff's career, the Pension Plan included a provision that allowed a retiree to receive a single life annuity, and for his/her surviving spouse to receive a death benefit similar to Option D under § 2-418 of the Pension Plan. This benefit was codified in City Code § 2-411(c) and read, in pertinent part, as follows:

Upon the death of any member employed on November 3, 1992, who is retired under the provisions of this Section ... there shall be paid to said member's beneficiary a death benefit of $10,000.00, and the benefits under Section 2-418, and the surviving spouse shall be paid the sum of $500.00 per month until death if said spouse is not a beneficiary under one of the options list-

---

ments, the Court's analysis and conclusions with respect to the individual Defendants are identical. Therefore, the term "Defendants" refers to both the City of Chattanooga and the Chattanooga Fire and Police Pension Fund, unless otherwise noted.

**2.** Plaintiff worked continuously for the Chattanooga Police Department, with the exception of a two-year period from 1989 to 1991. (Doc. 37-1 at 5).

**3.** For the remainder of this Opinion, references to the Chattanooga, Tennessee City Code will be cited as "City Code § x-xxx."

ed in Section 2–418. *If the member has not elected any option [under City Code § 2–418] prior to his or her death, a benefit shall be payable to the deceased's surviving spouse, if any, as though he or she had elected Option D, Section 2–418.* City Code § 2–411(c) (as codified in 2011) (emphasis added). The Court will refer to the emphasized language above as the "Default Death Benefit." [4] The effect of the language contained in the Default Death Benefit is as follows: a married retiree could choose not to elect an option under § 2–418, thereby receiving his/her pension in the form of a single life annuity. Upon the retiree's death, his/her spouse would then receive 50% of that monthly payment for the rest of said spouse's life as a death benefit. Notwithstanding Defendant City of Chattanooga's contention that this benefit was a "gratuitous" subsidy to which Plaintiff "was never entitled," (Doc. 37 at 3), the plain terms of the City Code created the above-described loophole [5] by which a retiree could receive the full amount of his/her pension in the form of a single life annuity, then have his/her spouse receive a generous death benefit paid in monthly installments, rather than electing a Joint

and Survivor option (and thereby receiving a reduced "actuarial equivalent" of a single life annuity under § 2–418).[6]

After the stock market crash of 2008, the Fire and Police Pension Fund ("the Pension Fund") suffered a reduction in value of 34%. (Doc. 43–7 at 4). In an attempt to maintain the actuarial soundness of the Pension Fund, Defendants began exploring opportunities to cut costs. One such cost was the Default Death Benefit, which Defendants believed to be "unnecessary … because the Plan already provides for survivor benefits under Section 2–418." [7] (Doc. 44 at 10). Accordingly, on December 11, 2012, the City Council passed Ordinance 12674, which was signed into law on December 13, 2012. Therein, the City Council amended § 2–411(c) to eliminate the Default Death Benefit for those employees not eligible to retire on January 1, 2013. The text of the changes to § 2–411(c) reads, in relevant part,

> BE IT FURTHER ORDAINED, That Chattanooga City Code, Part II, Chapter 2, Sec. 2–411, Subsection (c) be and is hereby amended by deleting said subsection in its entirety and substituting in lieu thereof the following:

**4.** In their briefs, the Parties have referred to this benefit by a variety of names, including the "no option option," and the "surviving spouse subsidy." (*See, e.g.,* Doc. 42 at 1).

**5.** Defendants' expert characterizes the death benefit as "subsidized payments over and above the member's actual accrued service retirement pension benefit." (Doc. 37–2 at 6).

**6.** As Plaintiff accurately notes, "[c]ontrary to the assertion of the city, the 'no option option' does not default to Option D <u>during the course of the member's life</u>. The actuarial reduction occurs <u>after</u> the member deceases [sic]. As a result, the payment of the Service Retirement Pension in the form of a single life annuity is not reduced." (Doc. 47 at 2 n.2) (emphasis in original). Rather, under the old system, a retiree could receive both a full single life annuity, *and* his surviving spouse

could keep receiving monthly benefits after the retiree's death as though the retiree had selected a Joint and Survivor option. The practical effect is that, in most circumstances, it was financially advantageous for a retiree to exercise the "no option option," rather than to affirmatively elect an option under § 2–418.

**7.** Defendants also claim that "the subsidized surviving spouse benefit had the effect of providing higher benefits for a married member who is similarly situated in all other respects (length of service, pay, rank, etc.) to a single member. The elimination of the subsidy corrected this disparate treatment between married and unmarried Fund members." (Doc. 44 at 10).

Effective January 1, 2013, upon the death of such member who is eligible for benefits under this Section, there shall be paid to said member's beneficiary a death benefit of $10,000.00, and the benefits, if any, elected by the member under Section 2–418. If the member has not elected any option prior to his or her death, a benefit shall be payable to the deceased's surviving spouse, if any, as though he or she had elected Option D., Section 2–418. *Notwithstanding the foregoing, if a member who is employed on November 3, 1992, but is not eligible for benefits under this Section on January 1, 2013 … shall die after retirement, there shall be paid to his or her beneficiary or beneficiaries the benefit of $10,000.00 and such benefits elected under Section 2–418.*

Chattanooga, Tenn. Ordinance 12674 (emphasis added).[8] Because it is uncontested that Plaintiff was not eligible to retire under § 2–411 on January 1, 2013, Ordinance 12674 eliminated the Default Death Benefit as to Plaintiff.[9]

Upon his retirement in late 2013, Plaintiff was informed that, in order for his spouse to receive continued payments upon his death, Plaintiff would have to elect a Joint and Survivor option under § 2–418. Plaintiff elected Option D. To provide the "actuarial equivalent" of a single life annuity, an adjustment factor was applied to Plaintiff's monthly pension payment. This resulted in Plaintiff receiving a 5% reduction in monthly payments to be paid over his lifetime, so that his wife could continue to receive 50% of those payments after his death. Had Ordinance 12674 not affected Plaintiff, he could have chosen to not elect an option under § 2–418, and his wife would have received 50% of Plaintiff's monthly pension payment after Plaintiff's death as a "death benefit," even though Plaintiff would have already received the full amount of his pension in the form of a single life annuity.[10]

Plaintiff claims that this 5% reduction in his monthly pension payment has effectively lowered the value of his pension, and has stripped him of his vested rights in violation of the Contracts, Due Process and Takings clauses of the United States Constitution, as well as the Law of the Land clause of the Tennessee Constitution. (Doc. 24 at 4–5). Defendants claim that the value of Plaintiff's pension has not been reduced at all, but rather that the 5% adjustment is necessary to provide Plaintiff with the actuarial equivalent of a single life annuity, as has always been mandated by § 2–418. (*See, e.g.*, Doc. 44 at 8–9). Furthermore, Defendants argue that Plaintiff did not have a vested right with respect to the Default Death Benefit, and that Ordinance 12674 therefore validly eliminated a benefit in order to maintain the actuarial stability of the Pension Fund. (*See, e.g.*, Doc. 59 at 2–6). On December 22, 2015, the Parties filed cross-motions for summary judgment. (Docs. 37, 41, 43). The Parties submitted responses in opposition (docs. 47, 48, 49), and replies (docs. 55, 56, 57), and this matter is now ripe for the Court's review.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 instructs the Court to grant summary judg-

---

**8.** For the remainder of this Opinion, references to Chattanooga, Tennessee Ordinances will be cited as "Ordinance xxxxx."

**9.** Plaintiff challenges the substantive efficacy of Ordinance 12674. For a discussion of this argument, *see infra* Section III.A.2.

**10.** It is undisputed that this 5% reduction in monthly payments, coupled with monthly payments to Plaintiff's wife after Plaintiff's death, is the actuarial equivalent of a single life annuity.

ment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the presence or absence of genuine issues of material facts must support its position either by "citing to particular parts of materials in the record," including depositions, documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). When ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its ... pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City*

*of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348; Fed. R. Civ. P. 56). The nonmoving party must present sufficient probative evidence supporting its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)); *see also White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475–76 (6th Cir. 2010). A mere scintilla of evidence is not enough; there must be evidence from which a jury could reasonably find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *Moldowan*, 578 F.3d at 374. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

The standard of review when parties file cross-motions for summary judgment is the same as when only one party moves for summary judgment. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). When there are cross motions for summary judgment, the court must "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* In considering cross motions for summary judgment, the court is "not require[d] ... to rule that no fact issue exists." *Begnaud v. White*, 170 F.2d 323, 327 (6th Cir. 1948).

## III. ANALYSIS

### A. Validity and Effect of Ordinance 12674

#### 1. Validity

As a preliminary matter, Plaintiff argues that due to procedural errors, Ordi-

nance 12674 was never validly enacted. (*See, e.g.,* Doc. 42 at 6–10). Specifically, Plaintiff claims that the City's actions are *void ab initio* because Ordinance 12674 was passed after only two readings instead of the three readings required by the relevant City Code provisions. *See* City Code § 2–411(d) ("The City Council, City of Chattanooga, in its discretion, only after a recommendation of the Board of Directors of the Fire and Police Pension Fund, upon advice by the mayor, may, by ordinance, passed on three (3) separate readings, amend any section of the Private Acts of 1949, as amended, or this Article XIII.").

Defendants do not contest that Ordinance · 12674 was passed after only two readings, but argue that two readings is all that was legally required. In 2004, the City Council amended the Charter of the City of Chattanooga to only require two readings to pass an ordinance. *See* Ordinance 11590 (amending the City Charter to require two readings, rather than three, to validly pass an ordinance, and declaring that "*all laws or parts of laws in conflict ... are hereby repealed.*") (emphasis added). Plaintiff claims that this change was ineffective as to the Pension Plan because a prior Ordinance declared that

> the city council shall have full power and authority without special ordinance referring to each ordinance amended, altered, repealed or modified, to amend, alter, repeal or modify any ordinance of a general nature other than contract ordinances ... in or by which the city has assumed such contract obligations as are protected by the Constitution of the United States or the State of Tennessee.

Ordinance 11272. Accordingly, because Ordinance 11590 does not specifically mention the Pension Plan, an allegedly con-tractual ordinance, Plaintiff argues that Ordinance 11590 cannot alter the Pension Plan.

Plaintiff's argument fails because Ordinance 11590 amended the City Charter,[11] as opposed to a general collection of city ordinances, and was passed after ordinance 11272. By repealing "all laws or parts of laws in conflict" with the change from three readings to two and codifying that change in the City Charter, the City Council unequivocally established that *all laws*, even those creating constitutionally protected contract interests, were subject to the new two reading requirement. Moreover, for reasons described in further detail *infra*, Plaintiff cannot claim that he had a constitutionally protected contract interest in the provision of the Pension Plan requiring three readings to alter or amend the Pension Plan.

■ Finally, Plaintiff's argument that alterations of the Pension Plan require three readings, notwithstanding the provisions of the City Charter, is without merit. While it is true that § 2–411(d) calls for three separate readings, "[t]he provisions of the charter are mandatory, and must be obeyed by the city and its agents; and, *if in conflict with an ordinance, the charter must prevail.*" *Marshall & Bruce Co. v. City of Nashville*, 109 Tenn. 495, 71 S.W. 815, 819 (1903) (emphasis added). *See also Barnes v. Ingram*, 217 Tenn. 363, 397 S.W.2d 821, 825 (1965) (same); *State ex rel. Lewis v. Bowman*, 814 S.W.2d 369, 373 (Tenn. Ct. App. 1991) ("It has long been the law in this state, as in many other states, that ordinances of a city are subordinate to the charter provisions."). As described in detail above, Ordinance 11590 amended the City Charter to require only

---

11. *See infra* for a detailed discussion of the supremacy of the City Charter over conflict-ing Ordinances.

two readings to pass an ordinance, and expressly repealed all laws or parts of laws in conflict with this provision. Because the City Charter prevails over a conflicting ordinance as a matter of Tennessee law, Ordinance 12674 was validly passed by the City Council on two readings.[12]

### 2. *Effect*

■ Plaintiff claims that even if Ordinance 12674 was validly enacted, it did not effectively eliminate the Default Death Benefit as to Plaintiff. Plaintiff's argument relies on a strained reading of Ordinance 12674, which reads in relevant part:

> Upon the death of any member employed on November 3, 1992, who is retired under the provisions of this Section . . . there shall be paid to said member's beneficiary a death benefit of $10,000.00, and the benefits under Section 2–418 . . . Effective January 1, 2013, upon the death of such member who is eligible for benefits under this Section, there shall be paid to said member's beneficiary a death benefit of $10,000.00, and the benefits, if any, elected by the member under Section 2–418. If the member has not elected any option prior to his or her death, a benefit shall be payable to the deceased's surviving spouse, if any, as though he or she had elected Option D., Section 2–418. Notwithstanding the foregoing, if a member who is employed on November 3, 1992, but is not eligible for benefits under this Section on January 1, 2013, or is employed after November 3, 1992, shall die

before retirement and after reaching the conditions to be eligible for benefits under this Section or shall die after retirement, there shall be paid to his or her beneficiary or beneficiaries the benefit of $10,000.00 and such benefits elected under Section 2–418.

Ordinance 12674 (altering City Code § 2–411(c)).

Plaintiff claims that this language creates four distinct classes of retirees. The first class is irrelevant for purposes of this analysis. The second class is a "catch-all" that consists of all members who are eligible for benefits under § 2–411. The beneficiaries of these members receive a death benefit of $10,000.00, any benefits elected under § 2–418, or the Default Death Benefit if no option under § 2–418 was elected. The third class, Plaintiff claims, consists of members employed on November 3, 1992 and not eligible for retirement on January 1, 2013 (among other types of employees not relevant to this analysis). The beneficiaries of these members receive a $10,000.00 death benefit and any benefits actually elected under § 2–418. Finally, Plaintiff describes a fourth class consisting of those members of class three who did not make an election under § 2–418 (i.e. those who chose to receive their pension as a single life annuity). Plaintiff argues that "[t]he beneficiaries of members of class four also receive the same ten thousand dollar death benefit as all the other classes. However, due to a lack of clear statutory instruction in Section 2–411, the

---

**12.** Plaintiff argues ad nauseam that he was not informed of the changes to the Pension Plan until just days before he retired. While the Parties dispute when, exactly, Plaintiff was informed of the changes, this disputed issue of fact is immaterial. The changes to the Pension Plan were validly enacted via local ordinance. It is well-established that citizens are "charged with knowledge of the law." *Faust v. Metro. Gov't of Nashville*, 206 S.W.3d

475, 498 (Tenn. Ct. App. 2006); *see also Atkins v. Parker*, 472 U.S. 115, 131, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985) ("The entire structure of our democratic government rests on the premise that the individual citizen is capable of informing himself about the particular policies that affect his destiny.") This is especially true here, where Plaintiff was, at the time Ordinance 12674 was passed, Chattanooga's Chief of Police.

benefits received by the surviving spouse of a class four member is unknown." (Doc. 42 at 13). Furthermore, Plaintiff argues, "[b]ecause the specific language in Ordinance 12674 which defines the benefits available to class three does not apply to members of class four, members of class four are entitled to the same benefits as members of the catch-all class two." (*Id.*).

The Court finds Plaintiff's reading of Ordinance 12674 untenable, as Plaintiff has conjured up a fourth class of retirees in attempt to create ambiguity where there is none, in violation of at least two well-established canons of statutory construction. First, the expression of one thing, or a list of things, suggests the exclusion of others. *See Nationwide Mut. Ins. Co. v. Cisneros*, 52 F.3d 1351, 1357 (6th Cir. 1995) ("[T]he maxim 'expressio unius est exclusion alterius,' ... states that the mention of one thing implies exclusion of another."). The plain terms of Ordinance 12674 indicate that if a member of the Pension Fund employed on November 3, 1992 and not eligible to retire on January 1, 2013, like Plaintiff, shall die after retirement, his/her beneficiary shall receive "the benefit of $10,000.00 and such benefits elected under Section 2–418." Ordinance 12674. This list does not also cross-reference and incorporate the benefits received by members of Plaintiff's so-called "catch-all class two" of retirees. Presumably, therefore, the City Council intended that if a retiree chose not to elect *optional* benefits under § 2–418, (and instead chose to receive his/her pension as a single life annuity) it intended for the retiree's beneficiary to receive *nothing* in addition the $10,000.00 death benefit.

Second, statutory interpretation should be "guided not by a single sentence or member of a sentence, but looking to the provisions of the whole law, and its object and policy." *John Hancock Mut. Life Ins.* *Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 94–95, 114 S.Ct. 517, 126 L.Ed.2d 524 (1993) (internal quotation marks and citations omitted). It is clear from the entirety of the above-quoted text that Ordinance 12674 was intended to *eliminate* the Default Death Benefit for employees not eligible to retire as of January 1, 2013, not to further enshrine it in an amendment to the Pension Plan. Indeed, Plaintiff's reading would render Section 2 of Ordinance 12674 entirely superfluous. This is further evident from the City Council's use of the phrase "notwithstanding the foregoing," preceding its explanation of death benefits available to retirees like Plaintiff. Moreover, aside from Plaintiff's strained reading of Ordinance 12674, every piece of record evidence indicates that it was the City Council's "object and policy" to eliminate the Default Death Benefit for those not eligible to retire as of January 1, 2013. (*See, e.g.*, Doc. 43–5 at 2; Doc. 43–6 at 3).

Accordingly, because the terms of Ordinance 12674 unambiguously eliminate the Default Death Benefit, Plaintiff's claim is without merit. Having established that Ordinance 12674 was both validly enacted and effectively eliminated the Default Death Benefit, the Court will now turn to the merits of Plaintiff's constitutional claims.

## B. Contracts Clause

 Plaintiff claims that the elimination of the Default Death Benefit amounts to a violation of the Contracts Clause of the United States Constitution. In order to violate the Contracts Clause, a state law must "operate[ ] as a substantial impairment of a contractual relationship." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978). The Supreme Court of the United States has developed a tripartite test for making such a determination. Courts must

consider "whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *General Motors Corp. v. Romein*, 503 U.S. 181, 186, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992). If it is determined that there is no contractual relationship, the court need not reach the remaining questions. *Id.* at 186–87, 112 S.Ct. 1105.

■ Plaintiff advances three sources that allegedly prove that he had a contractual interest in the Default Death Benefit. First, Plaintiff vaguely references the provisions of an employee handbook. Plaintiff, however, has failed to cite to a specific provision of such a handbook that creates a contractual interest in the Default Death Benefit. Moreover, Defendants have identified a provision of the handbook that specifically disclaims its ability to create contractual interests:

> This [handbook] provides a summary of the benefits for participants in the Pension Fund. The actual Pension Legislation (beginning on page 25) will govern the rights to benefits in all cases. The Board of Directors reserves the right to amend the Pension Fund legislation, in accordance with the law, from time to time. The Pension Fund may be terminated at any time.

(Doc. 43–2 at 19). Even had Plaintiff identified a statement in the employee handbook establishing a contractual relationship between the parties, the above-quoted disclaimer clearly puts employees on notice that any promises giving rise to contractually protected interests must be found in the pension legislation. Accordingly, the employee handbook cannot serve as a source for a contractually protected interest in the Default Death Benefit.

■ Second, Plaintiff, again vaguely, alleges that common knowledge among employees and decades of practice estab-lishes a contractual interest with respect to the Default Death Benefit. The United States Court of Appeals for the Sixth Circuit, however, has held that where the statutory language is unambiguous, plaintiffs may not rely on extrinsic evidence to establish a Contracts Clause violation. *See Puckett v. Lexington–Fayette Urban Cnty. Gov't*, 566 Fed.Appx. 462, 473 (6th Cir. 2014). As will be made clear *infra*, the language of the Pension Plan unambiguously states that employees only have a contractual interest in vested and accrued financial benefits. Plaintiff, therefore, cannot rely on extrinsic evidence such as "common knowledge" and customs to establish a contractual interest in the Default Death Benefit. *Id.*

■ Finally, and deserving of a more in-depth analysis, Plaintiff claims that the terms of the Pension Plain, codified in the Chattanooga City Code, confer upon him a contractual interest in the Default Death Benefit. Specifically, Plaintiff claims that after ten years of service, he became vested in the Pension Plan, and accordingly, "a baseline of his rights became firmly established and could not be reduced." (Doc. 42 at 19). Defendants disagree, claiming that Plaintiff's understanding "rests on misuse of key terms, such as 'vested,' and 'accrued.'" (Doc. 59 at 2).

■ Plaintiff faces a heavy burden in proving that a legislative enactment creates a contractual interest in the Default Death Benefit. It is well-established that "absent some clear indication that the legislature intends to bind itself contractually, the presumption is that a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." *Nat'l R.R. Passenger Corp. v. Atchison Topeka and Santa Fe Ry. Co.*, 470 U.S. 451, 465–66, 105 S.Ct. 1441, 84

L.Ed.2d 432 (1985). This, of course, is because "the principal function of a legislature is not to make contracts, but to make laws that establish the policy of the state... [T]o construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a legislative body." *Id.* at 466, 105 S.Ct. 1441. Accordingly, the Court must "proceed cautiously both in identifying a contract within the language" of the Pension Plan, "and in defining the contours of any contractual obligation." *Id.*

The Pension Plan reads, in relevant part,

> The City Council, City of Chattanooga, in its discretion, only after a recommendation of the Board of Directors of the Fire and Police Pension Fund, upon advice by the Mayor, may, by ordinance ... amend any section of the [Pension Plan] provided that such amendment is not inconsistent with sound actuarial principles, methods, and actuarial assumptions and further *provided that such amendment shall not in any way decrease any vested financial benefits accrued by any participant or beneficiary of the Fire and Police Pension Fund.*

City Code § 2–411(d) (emphasis added). Because the City Code gives the City Council discretion to amend the terms of the Pension Plan, it is clear that the City only shows intent to be bound contractually with respect to "vested financial benefits accrued by any participant or beneficiary of the Fire and Police Pension Fund." *Id.*

Whether Plaintiff has a contractual interest in the Default Death Benefit, therefore, depends on whether he is both vested and accrued in that benefit. A logical starting point for this analysis is the Pension Plan's vesting provision, which reads, in its entirety:

**Sec. 2–415.—Termination of employment after ten (10) years of service; vesting; death after termination.**

Except as otherwise provided in the Uniform Services Employment and Re-Employment Rights Act of 1994, a member who has completed ten (10) or more years of active service at the time of his or her termination of employment, or at the time he or she has been on leave without pay for a period in excess of ninety (90) consecutive days, shall have the right to either (1) or (2) as follows:

(1) A right to receive a one hundred percent (100%) refund of whatever sums he or she contributed to the Pension Fund. If such member is subsequently reemployed in the Fire or Police Department, he or she may at the time of reemployment reimburse the Pension Fund to the full extent of the amount he or she received from the Pension Fund upon said termination with interest compounded annually and computed at the rate utilized in the actuarial valuation of the Pension Fund from the date of withdrawal to the date of reemployment. Any reimbursement of amounts received upon prior termination shall be made by the date of reemployment and may not be reimbursed thereafter. If a member who is subsequently reemployed does not reimburse the Pension Fund, such member shall be treated as a newly hired member for purposes of the Pension Fund.

(2) A right to leave his or her contribution in the Pension Fund and be eligible to receive after reaching fifty-five (55) years of age a monthly deferred vested retirement benefit equal to two and four-tenths percent (24/10%) of his or her Average Base Salary as computed over the highest three (3) years of pay during the member's years of service for each year of active service, subject to a maximum of twenty-five years.

If the death of such member occurs prior to commencement of the payment of any benefits under this Section, a refund of whatever sums such member contributed to the Pension Fund shall be paid to the member's estate, and his or her beneficiary shall be paid a death benefit sum of ten thousand dollars ($10,000.00). If death occurs following the commencement of eligibility to receive benefits under this Section, benefits shall be payable according to the terms elected under Section 2–418.

City Code § 2–415.

It is thus clear that Plaintiff's claim that he became vested in *some* benefits after ten years of service is not without merit. As discussed previously, however, the expression of one thing, or a list of things, suggests the exclusion of others. *Cisneros*, 52 F.3d at 1357. Here, the City Council, in its vesting provision, provided that upon reaching ten years of service, an employee received a vested right to receive either (1) 100% of his contribution to the Pension Fund; or (2) to defer receipt of benefits until he/she reaches age 55, at which point he/she would receive a monthly pension benefit according to a set formula. Conspicuously absent from this vesting provision, however, is any mention whatsoever of the Default Death Benefit. Even a review of § 2–418, which is cross-referenced in the above-quoted vesting provision, does not reveal any discussion of the Default Death Benefit. This, of course, is because the Default Death Benefit to which Plaintiff claims a contractual entitlement is found in a now-repealed version of § 2–411(c). The Court, therefore, finds that as a matter of law, the ten year vesting provision does not amount to a "clear indication that the legislature intend[ed] to bind itself contractually," to provide the Default Death Benefit to any employee who amassed ten years of service. *Nat'l R.R. Passenger Corp.*, 470 U.S. at 465–66, 105 S.Ct. 1441. Accordingly, Plaintiff's claim that after ten years of service he became vested in *all* of the terms of the Pension Plan, including the Default Death Benefit, is without merit.

■ To the contrary, an analysis of the plain meaning of the terms "vested" and "accrued" shows that the City Council intended to bind itself contractually to the Default Death Benefit when an employee reached twenty-five years of service. Under Tennessee law, "[a]n employee has a 'vested' retirement right *when the employee has completed the requisite term of employment necessary* to be entitled to receive retirement benefits at some future time." *Cohen v. Cohen*, 937 S.W.2d 823, 826 (Tenn. 1996) (emphasis added). *See also Miles v. Tennessee Consol. Ret. Sys.*, 548 S.W.2d 299, 305 (Tenn. 1976) ("[A]n offer of a pension, the acceptance of same, *and the completion of the service of the employee*, creates a vested interest in said pension.") (emphasis added). Therefore, in order to be vested in the right to receive the Default Death Benefit, Plaintiff must have completed the requisite amount of years of service to be entitled to receive such benefit.

The Default Death Benefit is contained within the "Service retirement pension; maximum pension benefits; death benefit" section of the Pension Plan, codified in City Code § 2–411. The terms of § 2–411 clearly state that

a member of the Fund who was employed in the Fire Department or Police Department may at his or her election retire upon completion of twenty-five (25) years of active service in the Fire or Police Departments, and upon notifying the Board in writing of such election, receive an annual Service Retirement Pension.

City Code § 2–411(b). The Default Death Benefit, contained in a now-repealed version of City Code § 2–411(c), was only available "[u]pon the death of any member employed on November 3, 1992, *who is retired under the provisions of this Section,* or upon the death of such member prior to retirement, *but eligible for benefits under this Section.*" City Code § 2–411(c) (emphasis added).

Here, it is uncontested that at the time the Pension Plan was amended to eliminate the Default Death Benefit, Plaintiff was about six months short of reaching twenty-five years of service. Accordingly, while Plaintiff had completed ten years of active service and was thus vested in the benefits contained in City Code § 2–415, he had not yet met the years-of-service requirement to receive a Service Retirement Pension as codified in City Code § 2–411. Accordingly, because Plaintiff had not "completed the requisite term of employment necessary to be entitled to receive" the Default Death Benefit at the time it was eliminated, Plaintiff had not vested in that right. *See Cohen,* 937 S.W.2d at 826.

Furthermore, as noted in *Frazier v. City of Chattanooga,* "even if [the right to the Default Death Benefit"] was vested, it was not accrued. A right does not accrue until it becomes enforceable." 151 F.Supp.3d 830, 838 (E.D. Tenn. 2015) (citing Black's Law Dictionary (10th ed. 2014)). In the present case, Plaintiff's right to the Default Death Benefit does not become enforceable until Plaintiff "is retired under the provisions of [§ 2–411]," i.e. after twenty-five years of service. *See* City Code § 2–411(c). Accordingly, because Plaintiff's "right" to the Default Death Benefit was neither vested nor accrued at the time of its elimination, Plaintiff has failed to establish that he had a contractual right to such benefit.

Aside from his misguided reliance on the ten year vesting provision, Plaintiff relies heavily on *Blackwell v. Quarterly Cnty. Court of Shelby Cnty.,* 622 S.W.2d 535 (Tenn. 1981), for the proposition that the Default Death Benefit could not be legally eliminated. First, the Court notes that the *Blackwell* case involved a challenge to a change in the way that the base pension benefit was calculated. *See Id.* at 539. Here, Defendants did not change Plaintiff's benefit base, but rather eliminated a death benefit, so Plaintiff's reliance on *Blackwell* is inapposite. Even so, the central holding of *Blackwell* was that "public policy demands that there be a right on the part of the employer to make reasonable modifications in an existing plan if necessary to create or safeguard actuarial stability, provided that no then accrued or vested rights of members or beneficiaries are thereby impaired." *Id.* at 541.

The Court has already established that Plaintiff had no vested or accrued right in the Default Death Benefit. Moreover, Plaintiff has failed to present sufficient probative evidence that the elimination thereof was not "reasonable [and] necessary to create or safeguard actuarial stability." *Id.* Defendants have submitted the expert opinion of Mr. Leon Joyner, Jr., an actuary, that the changes were reasonable, necessary, and actuarially sound. (Doc. 37–2 at 7) ("In my opinion, the elimination of the [Default Death Benefit] was a reasonable change in response to the 2008 economic downturn. That economic downturn resulted in a significant reduction to the funded status of the Fund and increased the projected contributions needed for future funding. The elimination of this subsidy reduced the contributions required for funding by approximately

[$60,000] [13] a year and did not reduce the accrued benefit of any participant."). In response, Plaintiff has only submitted conclusory allegations that the elimination of the Default Death Benefit was neither necessary nor reasonable. Specifically, Plaintiff claims that "$60,000 is 0.00023166% of $259,000,000.00, the smooth value of the Fund. It is 0.00028302% of $212,000,000.00, the market value of the Fund." (Doc. 48 at 13 n.13) (emphasis in original). This, according to Plaintiff, is "a miniscule savings that has no meaningful impact on the financial health of this plan." (*Id.* at 14).

While this non-expert, conclusory opinion may have been enough to overcome a motion to dismiss under Fed. R. Civ. P. 12(b)(6), it cannot, in such a complex field as actuarial stability of pension funds, carry Plaintiff's burden under Fed. R. Civ. P. 56. Even if *Blackwell* were controlling on this issue, which the Court expressly holds it is not, Plaintiff's mere scintilla of evidence is not enough for a jury to reasonably find in favor of Plaintiff on the issue of the reasonableness or necessity of the elimination of the Default Death Benefit.[14] *See Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

Because Plaintiff has failed to establish a contractual interest in the Default Death Benefit, his claims under the Contract Clause of the United States Constitution fail as a matter of law. Accordingly, Defendants' Motions for Summary Judgment with respect to these claims will be **GRANTED**.

---

**13.** The original report read $100,000, but Mr. Joyner admitted in his deposition that this was a typographical error. (Doc. 41–5 at 31).

**14.** Plaintiff also claims that because the relevant language discussed *supra* of § 2–411(d) was not added to the Pension Plan until after Plaintiff had reached ten years of service, the City may not rely on such language to estab-

**C. Due Process and Law of the Land Clauses**

Next, Plaintiff claims that the elimination of the Default Death Benefit violated his rights to Due Process under the United States Constitution, and the Law of the Land Clause of the Tennessee Constitution. Because Tennessee courts interpret these clauses coextensively, the Court will analyze them together. *See, e.g., Daugherty v. State*, 216 Tenn. 666, 393 S.W.2d 739, 743 (1965) (Defendant first cites Article 1, Section 8 of the Tennessee Constitution which is the 'law of the land' section. This is, of course, synonymous with the 'due process of law' used in the Fifth Amendment and in the First Section of the Fourteenth Amendment to the Constitution of the United States."). It is unclear from the face of Plaintiff's arguments whether his due process challenges are substantive or procedural; this is immaterial, however, because both claims fail as a matter of law.

*1. Substantive Due Process*

 First, with respect to substantive due process claims, the Sixth Circuit has established that "[t]he substantive Due Process Clause is not concerned with the garden variety issues of common law contract. Its concerns are far narrower, but at the same time, far more important." *Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir. 1990). Furthermore, "an interference with a property interest in a pure benefit of employment ... is an interest that can and should be redressed by a state breach of contract action and not by a federal action under [42 U.S.C.] section

lish that there is no contract. Even accepting the validity of this argument, Plaintiff has still failed to show that at the time of its elimination Plaintiff had a vested and accrued right to receive the Default Death Benefit. Accordingly, under *Blackwell*, the City was within its rights to eliminate such benefit.

1983." *Ramsey v. Bd. of Educ. of Whitley Cnty.*, 844 F.2d 1268, 1274–75 (6th Cir. 1988). Accordingly, the elimination of an alleged contractual right to the Default Death Benefit cannot amount to a substantive due process violation.

Even if the substantive portion of the Due Process Clause were applicable, the elimination of the Default Death Benefit is, as Plaintiff concedes, subject to rational basis review. (*See, e.g.*, Doc. 48 at 18). Statutes are subject to "a strong presumption of validity under rational basis review," and will be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis." *Craigmiles v. Giles*, 312 F.3d 220, 224 (6th Cir. 2002) (internal quotation marks omitted). Here, Defendants have articulated, and Plaintiff has failed to negate, that the Pension Fund was drastically diminished as a result of the stock market crash of 2008. Because the Court finds it entirely rational for Defendants to eliminate a non-vested, non-accrued death benefit in order to improve the financial stability of the Pension Fund, Defendants' changes to the Pension Plan survive rational basis scrutiny.[15]

Accordingly, Plaintiff's substantive due process claims and analogous claims under the Tennessee Constitution fail as a matter of law, and Defendants' Motions for Summary Judgment regarding same will be **GRANTED**.

### 2. Procedural Due Process

Finally, in order to show a procedural due process violation, Plaintiff must show that he has been deprived of a property interest without adequate process. *See, e.g., Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576–77, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* at 577, 92 S.Ct. 2701. While a contract can create such a property interest, *see, e.g., Leary v. Daeschner*, 228 F.3d 729, 741 (6th Cir. 2000), Plaintiff has failed to establish that he had a contractual right to the Default Death Benefit. *See supra* Section III.B. Furthermore, Plaintiff cannot claim that he has a property right in the Default Death Benefit because to have such an interest, Plaintiff must "have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577, 92 S.Ct. 2701. Plaintiff cannot, however, have such a claim of entitlement because "a party cannot possess a property interest in receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary." *Med Corp., Inc. v. Lima*, 296 F.3d 404, 409 (6th Cir. 2002). Here, Plaintiff failed to demonstrate that Defendants intended to be bound with respect to the Default Death Benefit before an employee reached twenty-five years of service. Accordingly, until an employee reached this threshold, Defendants could, in their discretion, eliminate the Default Death Benefit.

At any rate, "when a plaintiff's alleged injury results from a legislative act," such as the Ordinance at issue here, "the legislative process provides all the process that is constitutionally due." *Smith v. Jefferson Cnty. Bd. of Sch. Com'rs*, 641 F.3d 197, 217 (6th Cir. 2011) (internal quotation marks omitted). As discussed in detail, *supra* Section III.A.1, the

---

**15.** While Plaintiffs argue that the elimination of the Default Death Benefit had only a marginal effect on the Pension fund, Defendants have argued, and Plaintiff has not refuted, that the elimination of the Default Death Ben-

efit was just the beginning of a larger package of changes aimed at improving the long-range financial health of the Pension Fund. (*See, e.g.*, Doc. 37–2 at 5–6).

City Council validly passed Ordinance 12674 to eliminate the Default Death Benefit.

Accordingly, because Plaintiff has failed to establish that he was deprived of a constitutionally protected property interest without due process of law, Defendants' Motions for Summary Judgment regarding Plaintiff's procedural due process claims and analogous claims under the Tennessee Constitution will be **GRANTED**.

### D. Takings Clause

Finally, Plaintiff claims that the elimination of the Default Death Benefit amounts to a violation of the Takings Clause of the United States Constitution. Having established that Plaintiff has no constitutionally protected interest in the Default Death Benefit, it should be eminently clear that his Takings Clause claim must also fail as a matter of law. *See, e.g., Lynch v. United States*, 292 U.S. 571, 579, 54 S.Ct. 840, 78 L.Ed. 1434 (1934) (*"Valid* contracts are property... protected by the Fifth Amendment.") (emphasis added). Furthermore, even if Plaintiff did have a valid property interest in the Default Death Benefit, his claim would fail because "'property' as used in [the Takings Clause] is defined much more narrowly than in the due process clauses ... it does not extend to contracts." *Pittman v. Chicago Bd. of Educ.*, 64 F.3d 1098, 1104 (7th Cir. 1995).

Accordingly, Defendants' Motions for Summary Judgment as to Plaintiff's Takings Clause claims will be **GRANTED**.

### IV. CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment (Doc. 41) is hereby **DENIED**, and Defendants' Motions for Summary Judgment (Docs. 37, 43) are hereby **GRANTED**.

A separate judgment will enter.

**SO ORDERED** this 15th day of March, 2016.